of America at all. Argument is not to exceed 15 minutes for the appellant and 15 minutes by the appellees. Counsel, you may proceed for the appellant. Your Honors, and may it please the Court, I would like to request three minutes be left for rebuttal. It is my pleasure to be here on behalf of Dr. Robinson on the matter of Cholewa v. U.S. v. Robinson. This is, in fact, the second time that this matter has come before this Court on the matter of Westfall Act certification. This time we come with a narrower set of issues related to the invocation of the Fifth Amendment by Dr. Robinson in this matter and the use of the adverse inference by the District Court and the findings of facts ordered by this Court. The District Court, in holding an evidentiary hearing to consider whether there are necessary factual findings to deny or grant the Westfall Act petition, erred in multiple ways. First, the District Court erred in finding that the adverse inference under the invocation of the Fifth Amendment applied in this matter. The District Court further erred in relying on the adverse inference to find that the conduct at issue here, purported sexual conduct, did, in fact, occur. It relied on more than just the adverse inference, right? We had the recording, we had the plaintiff's testimony, so it wasn't just the adverse inference, right? Your Honor, that is, in fact, part of the issue here. If we look closely at the District Court's actual factual findings, not relying on the use of the adverse inference, the facts do not support a finding that the sexual conduct, in fact, occurred. The facts are finding that the sexual conduct occurred. The Court says on... I'm sorry to interrupt, but maybe I'm misreading Judge Mathis's question. My understanding is a court can consider the adverse inference if there's some other independent evidence. Now, I understand your argument to be, A, the Court wasn't allowed to consider the adverse inference, and, B, even if you considered the adverse inference and everything else, it didn't add up to the finding that the Court reached. Is that right? Yes, Your Honor. Okay, so why the existence of the recording, the fact that your client wasn't keeping good records, wasn't cooperative in the investigation, wasn't recording things, whatever, all of that is just independent evidence that would allow the Court to take into account the adverse inference, right? Your Honor, yes, they can consider these things, but looking at the factual record, there isn't independent evidence that supports specifically looking at the allegations of sexual conduct. In fact, the District Court found in its own opinion, ECF number 144, page ID 5053, quote, these exchanges, referring to the exchanges captured in the audio recording, between plaintiff and Dr. Robinson are not directly probative of sexual contact, but arguably suggest that the contact occurred because Dr. Robinson engaged in the conversation without denying the truth of what plaintiff said. I mean, I read that statement as kind of a, I mean, it's not direct evidence, it's circumstantial evidence. I mean, the Court clearly is weighing it. The Court clearly views it as evidence. I mean, the Court isn't saying, hey, I'm considering something that's not actually evidence, right? I mean, that would make no sense. Well, and that's the problem is ultimately the two errors that the District Court engaged in become circular because in reading the remaining of the paragraph, you know, the Court leans into discussing the Fifth Amendment, the adverse inference. It's about separating the two considerations on whether the adverse inference should apply and whether there are independent factual support for the allegations before that inference is applied. That's at issue here because if we look at just the evidence, regardless of whether Dr. Robinson invoked the Fifth Amendment or not, there isn't independent evidence that supports that sexual conduct occurred. If we look at the recordings themselves, while the Court notes that there... What about the plaintiff's testimony? Didn't he testify that it occurred? Your Honor, looking at what the Court said about plaintiff's testimony, his testimony is inconsistent. The Court notes that there are reasons to question his credibility. There are, you know, and these issues of credibility go straight to the issues that go to the factual findings that are relevant. Didn't that go to more so how often it occurred rather than whether it occurred? Not necessarily, Your Honor. Looking at ECF number 144, page ID 5054, the Court notes that the plaintiff not only disputed and not only changed that fact but contradicted his own complaint that the sexual conduct did not occur at every session. He contradicts his own timeline. He contradicts what that conduct was. We're not talking about, you know, some minor factual disputes that can be chalked up to the passing of time. These are major credibility issues that the Court is saying undermine the very, frankly, main point and the main piece of evidence that applies to whether this sexual conduct occurred or not because even the Court notes... Everything you're saying, the Court knew, obviously, and the Court acknowledged it, and the Court says the plaintiff is proven reliable in part because the audio recording supports his allegation, blah, blah. Plaintiff's general allegation that sexual touching occurred at some point is supported by the audio recording and other circumstantial evidence. Why isn't that enough to then also take into consideration the adverse or the invocation of the Fifth Amendment? Because, Your Honor, even in that finding, they're inextricably holding the adverse inference and the factual finding together. How is that true? In the page that Judge Nalbandian just cited is this specific footnote where the judge, relying on certain allegations, have remained consistent throughout the litigation, and then footnote 10 specifies some very, very specific statements, which the judge, doing what a judge should do, weighing credibility, and when you weigh it, you say there's some pro, there's some con, and I find, as the finder of fact, that some of them are stronger than the others. It seems to me the judge did exactly what a judge should do, is not over-reading the evidence, but explaining the evidence. Your Honor, I think it's relevant to note that, first and foremost, this particular passage comes after the Court has already decided the adverse inference applies. In fact, that is where the Court starts its opinion, is finding that the adverse inference is inherently part of this. I mean, just looking at, as soon as we get before, when we're discussing the evidence related in this matter, the Court's already reflecting and noting. Dr. Robinson invoked the Fifth regarding this particular fact. There is no testimony from Dr. Robinson as to this particular fact. Although, as you're saying, sequentially he's put it somewhere in a heading, but the discussion of adverse inference, in fact, doesn't begin until the next page, 29. The stuff we've been focusing on was at 28, and I don't see any reference or citation. As I indicated earlier, it simply discusses direct evidence, the testimony, and then circumstantial evidence, and only then on the next page does it start with the adverse inference. Your Honor, I would refer you to page 25 of the brief, which is page ID 5053. In the part that I highlighted for the Court, the following sentence directly thereafter, which is, silence in the face of an assertion may be considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question. We're setting up, as we're evaluating the evidence, the Court is inherently introducing the silence aspect, the invocation of the Fifth Amendment, to add strength to the claims themselves, because if we take out the Fifth Amendment consideration in this matter, it's more than just an issue of credibility as to the changes in plaintiff's testimony. It's about the other independent factual evidence that exists in this matter, like Dr. Stromberg's testimony of her investigation and what they looked into when these allegations were first brought up to the VA. First and foremost, some of the allegations are impossible. When it comes to whether a plaintiff had easy access to Dr. Robinson by just walking in through the hall, without checking in, without appointment, Dr. Stromberg is saying that would have been impossible, given the way the doors locked, given the safety protocols put in place. The cameras didn't capture the movements described by a plaintiff. In fact, the Court notes in its opinion that it's hard to believe that the sexual conduct as described by a plaintiff at times could have occurred within the confines of the VA without other staff being alerted to it. These are part of the relevant factual considerations in this Court, but the Court gets bogged down by an early acceptance that Dr. Robinson's silence is in fact probative, goes to the probative weight of that evidence. Do you agree that there is a – you're saying two different things. They may conflate them, but one is silence in the face, and the second is invoking the Fifth Amendment. Right. Absolutely. Okay. I mean, the silence is on the audio recording, right? It is. There is silence in the – Page 25 or whatever you're talking about, that's not – that doesn't deal with the Fifth Amendment issue. That's silence on the – that's a non-denial on the recording. So that's – well, two things, Your Honor. That's part of the issue in this case is that we're not naming the Fifth Amendment, but the Fifth Amendment is being brought in and being given probative value into the evaluation if there's independent evidence. There's one danger. And to reflect as to your question about the silence in the recording, you know, with regard to the silence and even the comments that Dr. Robinson made in the recording, the Court itself notes in footnote nine that it's complicated just to – of the parties in this matter to say that her response is considered silence to that assertion. If there is an element of how could she have responded to those questions given that it was in a therapeutic setting, it isn't – there's nothing in that recording itself that would say there was sexual conduct occurring, but definitely not at the amount described by plaintiff and not within – and not – definitely not at that time. Given that all of these – all of the allegations are within the scope of Dr. Robinson's employment, I would ask that this Court overturn the lower court's opinion, and I reserve further. Thank you. Okay, thank you. We'll have you about all time. Good morning, Your Honors. Christopher Desmond from Venn-Johnson Law on behalf of the plaintiff, Trey Haleva. Your Honors, I'm going to be dividing up my time with Brother Counsel from the Department of Justice. The intent is for me to take seven minutes and for the DOJ to take eight. Okay, I'm confused about the party alignment here. Yes, Your Honor. Are you arguing in favor of the judgment or against the judgment? I am arguing in favor of the fact that – in favor of the judge's factual findings that there was sexual conduct occurred, but contrary to the judge's ruling that the United States should only be substituted in for purpose of those limited sexual acts as opposed to the other non-sexual acts. So you want reversal, am I correct? I don't want reversal on the factual findings, Your Honor. The judgment – my understanding is there's one judgment in the case. The case is – the judgment is there's not going to be substitution of the U.S., right? Well, the judgment was there would be substitution for the non-sexual acts and no substitution for the sexual acts. Okay. And then there's also judgment about what is and is not a sexual act. Right, but you're challenging – my understanding is you're challenging the judgment that the sexual acts were not in the scope of employment. Is that right? That is one of the arguments in our brief, Your Honor. It's one of the arguments within our brief. Okay, so you want part of the – I'm just asking. Yes. Do you want part of what the judge said to be vacated and remanded? Are you looking to change part of the judgment? Yes, I am, Your Honor. Yes. Did you file a notice of appeal? I did not file a notice of appeal, Your Honor. Why are you allowed to argue today? This court has extended argument to me today, Your Honor, as it did in the previous appeal in this case. This case is here on essentially a similar appellate posture to the last time that it was here in front of a panel that – Okay, but there's not some technical argument that I'm missing. You probably shouldn't be here, but you were allowed to be here. Well, I don't know about that, Your Honor. I don't know that I'd say I probably shouldn't be here because I think that there are also – So you think you can be here without filing a notice of appeal when you want to change the judgment below? I think that – Maybe you should. I don't know. Well, Your Honor, I guess what I would say to that, Your Honor, is there are portions of our argument that don't involve changing the judgment at all. And so perhaps this court says there are portions – So the alternative grounds – oh, sorry. So you're arguing for affirmance that there was sexual conduct. Absolutely, I am, Your Honor. So, yes, I am arguing that portions of this judgment were correct. And so there could be aspects of the argument that the court says aren't properly in front of this court and shouldn't be entertained. But in terms of the argument that the court erred in finding that sexual acts occurred, I don't think that there should be any dispute that we have standing. Okay, I'm sorry. No, you're welcome, Your Honor. And I apologize for the misunderstanding on my end on that. Your Honors, I think that perhaps the biggest hurdle to opposing counsel when it comes to this idea that the district court only considered this adverse inference and that's what the ruling was really based on is that the district court directly refutes that argument within its opinion. The court recognizes that Dr. Robinson is saying you can't simply use the adverse inference. There has to be other evidence in this record. And the court says there is indeed other evidence of this record. And so it references the testimony of my client. It references one other thing that I think favors us in contradiction to what opposing counsel was saying, and that's the investigation that was done by Dr. Stromberg. Dr. Stromberg is the supervising doctor for Dr. Robinson. And while Dr. Stromberg did say that there were certain parts of my client's testimony, such as sexual conduct occurring on a Sunday when the office was closed, she was saying I'm not certain how that could have happened. But what she did say was that when we looked into this, we saw that Dr. Robinson had roughly three times the number of interactions with Mr. Haleva as she did with other clients, and there was no explanation as to why that increased contact would have been occurring. She noted that when they confronted Dr. Robinson and asked Dr. Robinson for her phone records in order to be able to substantiate whether there were these improper phone calls happening, Dr. Robinson refused to produce her phone in relation to that response. And so this district court considered a number of factors beyond simply the invocation of the Fifth Amendment. I appreciate the concern for the Fifth Amendment, and I think that it is something, obviously, that this court has to be concerned about and pay attention to. But if this were an instance where we were simply levying accusations against Dr. Robinson with no evidence whatsoever, and then because she doesn't want to respond to them and invokes the Fifth, we say she's necessarily responsible, that would flow into the category of cases that opposing counsel is relying on. But in this situation, that's not what we have. And so I don't think that this is a situation where the district court made an improper factual finding. I think that the references, by the way, to the district court does have some references to some inconsistencies in my client's account. But ultimately what the district court says, Judge Mathis, I think as you were noting, is that might speak to the frequency of the events that occurred or the dates that the events occurred on, but it didn't, in the district court's mind, relate to whether or not that inappropriate contact did actually occur within the presence of the VA hospital. My client, of course, as the district court notes, is an individual who did multiple active tours of duty in combat zones where he suffered injury. It was the very basis for the treatment he was receiving from Dr. Robinson was the PTSD he incurred on behalf of this country. And so I think to then turn to an individual who's experiencing those circumstances with PTSD and to criticize him for his lack of complete clarity of memory is unfortunate. And, of course, our case law tells us that this court has to defer to the district court's credibility findings. This district court was explicit that he did find my client to generally be credible when it came to the idea that sexual contact occurred. So for that reason, Your Honor, I would ask that you affirm the district court's finding that there was sexual contact that occurred here. I would note, Your Honor, that I concur with opposing counsel on the idea that if the United States is substituted in for any portion of this, the United States should be substituted in for the entirety of it. That is an issue of first impression in the Sixth Circuit, as the district court noted and as opposing counsel notes. Does the statute talk about claim or claims? It does talk about claim. But, Your Honor, one of the things that jumps out to me about that, and I'll finish up so I don't jump into Brother Counsel's time. You know, when Mr. Haleva gets assigned by the United States government to go to Dr. Robinson in response to the injuries that he suffered, the care that he's getting, he's going there for the entirety of his care. So for the government to be able to pull back and to say, well, you know what? All the parts of your care that went wrong, that hurt you, were not responsible for that part. That had nothing to do with her employment with us. But the other parts of it, that is all connected to her employment. The injuries that he suffered, he suffered completely at the hands of Dr. Robinson while he was within the confines of the VA hospital, getting the care at the direction of the United States. So I think it would be proper for this court to substitute her in in the entirety, and there's no authority within this circuit that prevents this court from reaching that holding. Thank you, Your Honors. I appreciate your time. Thank you, Counsel. Good morning, Your Honors. May it please the court. Brad Darling appearing on behalf of the defendant, Appley, United States of America. The challenge that was made here by Dr. Robinson is a relatively narrow challenge. It's the position of the government that that's the only challenge that Your Honors should be able to consider on appeal. As you noted, Judge Nalbandi and the plaintiff, Sergeant Haleva, has not filed a notice of appeal, and the United States made the additional argument in its brief that the only party that's able to challenge a denial of certification by the government is the federal employee. I'm not going to belabor this point, but as Your Honors have already recognized, there is independent evidence in the record that this sexual and romantic relationship occurred between these parties. Those include the audio recordings that were played during open court. The district court judge had the opportunity to hear live testimony from both Sergeant Haleva and Dr. Robinson and compare the voices that were on the audio recordings to the voices that he heard in open court. Additionally, there were three times more phone calls between Dr. Robinson and Sergeant Haleva than any other patient during the relevant time frame. That's another fact that the district court considered. The district court also found that Dr. Robinson failed to document these calls in Sergeant Haleva's medical records. She failed to document other visits in the medical records. And she refused to provide her personal cell phone records, even in a redacted form, during the VA's investigation of this matter. So the argument of Dr. Robinson is that the district court only looked at the Fifth Amendment and said, well, since she didn't testify about any of this, about my treatment of and interactions with Sergeant Haleva, therefore all of this sexual misconduct must have happened. But that's simply not the case because of all this other evidence. An additional point I'd like to bring to your Honor's attention is that when a federal employee seeks to overturn the government's denial of certification, the employee has the burden of proof at the district court level. Therefore, it was Dr. Robinson's burden to bring forward some type of evidence that this conduct was indeed within the scope of her employment. Her strategy below, and her strategy again here on appeal, is essentially just to attack the plaintiff's credibility. Not bring forward independent evidence that this did not happen, but just poke holes in the plaintiff's story. The district court carefully weighed the plaintiff's testimony, did find partially credible, partially not credible, but that's exactly what district courts do. Some things they believe, some things they don't believe, but ultimately, given the circumstantial evidence that this relationship did happen, and given plaintiff's partially credible testimony, that was enough to convince the district court that Dr. Robinson had not met her burden of proof to overturn the government's decision. Unless your Honors have any questions for me, those are the main points that I wanted to make. What about the point about suit-wide immunity versus claim-by-claim immunity? Yes, Your Honor. Although I'm curious how... This one's interesting because the statute says claim, but what is a claim? Is it med-mal negligence, are those the claims, or are we defining them by conduct? Anything related to the sexual contact is a separate claim. You wouldn't ordinarily define a claim that way, would you? Well, the statute, and just to provide you the citation, is 28 U.S.C. 2679 D.1. talks about incident, and it reads, and I quote, upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose. So the plain language of the Westfall Act has two distinct elements to it. It has claim, which the government understands to mean the entire lawsuit, and incident, which means individual acts or incidents. Obviously in the circumstance of a car crash with a mail truck. That's easy. There's one incident. There's an accident. That's it. It's different when you have a course of conduct that occurs over time, and there's a published First Circuit opinion that considers exactly this and says that you have to go incident by incident. In the context of the Westfall Act? Yes, Your Honor. That case is called Lyons v. Brown. The citation is 158 F. 3rd. 605. The way I conceptualize this argument, I sort of think of it as in for a penny, in for a pound. Dr. Robinson and Sergeant Haleva would have the court believe that if there's any small aspect of a claim that falls within the scope of employment, therefore the government is on the hook for a bunch of other stuff that everybody would agree is outside the scope of employment. The First Circuit considered that exact issue and rejected that theory. Basically said, given the flexible rules of pleading, it's very easy for somebody to plead that an in-scope incident would therefore encompass a bunch of out-of-scope conduct, and that cannot be the purpose of the Westfall Act. It's also contrary to the plain language of the Westfall Act that I quoted to Your Honor, where it talks about incident and then it talks about claim as two separate and distinct concepts. Okay. Thank you. Thank you, Your Honor. Thank you for your argument. Rebuttal? Your Honor, to address some of the arguments made by learning counsel, both learning counsels, with regard to the calls and their value as probative evidence, Dr. Stromberger herself recognized that while there were a lot of calls, the calls did not generally raise alarm bells for her. I just wanted to address that particular point. But I want to bring us back to the fact that the adverse inference was initially and improperly applied. Looking at the court's opinion, looking at the court's findings of fact on page 21 and discussing the audio recording, the court in describing what was in the audio recording, they heard the voices, the court notes, Dr. Robinson pled the fifth, Dr. Robinson's silence in the face of probative evidence against her permits the court to draw an adverse inference. Going to the part of the briefing regarding adverse inference, pages 29 and 30, the court does not highlight its factual findings in depth to support what the independent evidence is that supports that the sexual conduct occurred. That is the pivotal first inquiry that has to be made. Looking at the court's opinion about the adverse inference, Dr. Robinson is being penalized, ultimately, for invoking the Fifth Amendment. And while that is appropriate in some cases, the courts are clear in the case law that there must be first an independent factual finding. The court notes during the factual findings, in discussing the fact finding investigation, the court's highlighting that she refused to answer questions about her, about the matter, refused to provide her personal phone records. Those aren't independent factual findings that the sexual conduct occurred, which is the inquiry that needs to be made before the adverse inference is applied and then relied on. So that's really the root of it all. The decision by the district court to apply the adverse inference was rolled into giving the evidence its weight, and therefore causing the adverse inference evaluation to not be done properly with its own fact investigation. Looking at the facts in this case, there is no independent factual support that the sexual conduct has occurred, that even the recording, which is probative, there's no arguing that, does not serve as independent factual support that the sexual conduct occurred. With regard to, briefly, the in-for-penny-in-for-a-pound argument, and I think that there is reason to deviate, and even based on counsel's pleading concerns, at this point the instruction being given to the plaintiffs is, you're going to have to be careful how you plead this because the U.S. might use your pleading to get out of its responsibility, and the weight of the Westfall Act, if I may briefly finish, it's putting the onus on plaintiffs in a way that the Westfall Act did not contemplate. It is not contemplated by the structures of the U.S. government, who, for example, doesn't require independent federal employees to have their own malpractice insurance because it is the government who is ultimately responsible. We ask that this court reverse the lower opinion. Thank you, Your Honors. Thank you. Thank you, counsel. Thank you all. The case will be submitted.